NO. 24-10139

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

BRUCE HENRY,

Appellee,

v.

ATTORNEY GENERAL OF THE STATE OF ALABAMA, ET AL.

Appellants.

On Appeal from the United States District Court
for the Middle District of Alabama

**APPELLEE'S BRIEF**

Paul M. Dubbeling
P.M. Dubbeling, PLLC
210 North Columbia Street
Chapel Hill, NC 27514
919-635-6005
paul.dubbeling@pmdubbeling.com

Algert S. Agricola, Jr.
Barbara H. Agricola
Agricola Law, LLC
127 South 8th Street
Opelika, AL 36801
334-759-7558
al@agricolalaw.com
barbara@agricolalaw.com

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 11th Cir. R. 26.1, counsel for Plaintiff-Appellee Bruce Henry certifies that the following persons may have an interest in the outcome of this case:

1. Abernathy, Ron (Sheriff of Tuscaloosa County, Alabama) – Defendant-Appellant;

2. Adams, Hon. Jerusha T. – United States Magistrate Judge (Middle District of Alabama)

3. Agricola, Barbara H. – Counsel for Plaintiff-Appellee Bruce Henry;

4. Agricola, Algert S. Jr. – Counsel for Plaintiff-Appellee Bruce Henry;

5. Agricola Law, LLC

6. Albea, Stuart D. – Counsel for Defendant-Appellant Sheriff of Tuscaloosa County;

7. Davis, James W. – Counsel for Defendants-Appellants District Attorney of Tuscaloosa County and Attorney General of Alabama;

8. Dubbeling, Paul M. – Counsel for Plaintiff-Appellee Bruce Henry;

9. Harris, Andrew Reid – Former Counsel for Defendants-Appellants District Attorney of Tuscaloosa County and Attorney General of Alabama;

10. Henry, Bruce – Plaintiff-Appellee;

11. Huffaker, Hon. R. Austin – United States District Judge (Middle District of Alabama);

12. LaCour, Edmund Gerard Jr. – Counsel for Defendant-Appellant Attorney General of Alabama;

13. Marshall, Steven (Attorney General of Alabama) – Defendant-Appellant and Counsel for Defendants-Appellants District Attorney of Tuscaloosa County and Attorney General of Alabama;

14. Mauldin, Dylan – Counsel for Defendants-Appellants District Attorney of Tuscaloosa County and Attorney General of Alabama;

15. McKay, Charles – Counsel for Defendants-Appellants District Attorney of Tuscaloosa County and Attorney General of Alabama;

16. Mink, Richard D. – Counsel for Defendants-Appellants District Attorney of Tuscaloosa County and Attorney General of Alabama;

17. P.M. Dubbeling, PLLC

18. Seiss, Benjamin – Counsel for Defendants-Appellants District Attorney of Tuscaloosa County and Attorney General of Alabama; and

19. Webb, Hays (District Attorney of Tuscaloosa County, Alabama) – Defendant-Appellant.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

Respectfully Submitted,

AGRICOLA LAW, LLC

/s/ *Algert S. Agricola, Jr.*
Algert S. Agricola, Jr.
Alabama State Bar No. 0364-R79A
127 South 8th Street
Opelika, AL 36801
334-759-7557
Attorney for Plaintiff-Appellee

**STATEMENT REGARDING ORAL ARGUMENT**

By Order of this Court dated March 15, 2024, this case is due to be placed on the first available oral argument calendar upon the completion of briefing.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ........................................... i

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ....................................................................................1

STATEMENT OF THE ISSUES ...................................................................5

STATEMENT OF THE CASE .....................................................................7

    *A.*    *Course of Proceedings and Disposition in the Court Below* ......................7

    *B.*    *Statement of Facts* ................................................................8

        *i.*    *The Scope of Alabama Code § 15-20A-11(d)(4)* .......................8

        *ii.*   *The Risk Posed by Sex Offenders as a Class* ..........................10

        *iii.*  *Mr. Henry* ................................................................12

        *iv.*  *Risk Assessment* .........................................................13

    *C.*    *Standard of Review* ..............................................................14

SUMMARY OF THE ARGUMENT ..............................................................15

ARGUMENT ........................................................................................16

    *A.*    *There is No "Except-for-Sex-Offenders" Rule in the Constitution* ..........16

    *B.*    *Alabama Code § 15-20A-11(d)(4) Does Not Pass Constitutional Review* ...................................................................26

    *C.*    *The Existence of a Hypothetically Constitutional Application of a Statute Does Not Save It Under Strict Scrutiny Review.* .......................32

    *D.*    *The District Court Properly Enjoined Enforcement of § 15-20A-11(d)(4)* ...................................................................36

CONCLUSION ......................................................................................38

CERTIFICATE OF COMPLIANCE ..............................................................40

CERTIFICATE OF SERVICE ............................................................................41

# Table of Authorities

**Cases**

Alley v. U.S. Dep't of Health & Hum. Servs., 590 F.3d 1195
(11th Cir. 2009)....................................................................................37

Ams. For Prosperity Found. v. Bonta, 141 S. Ct. 2372 (2021) ............................28

Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200
(11th Cir. 2008)....................................................................................15

Ariz. Free Enterprise Club's Freedom Club PAC v Bennet, 564 U.S. 721
(2011)....................................................................................27

Boggs v. Boggs, 49 Iowa 190 (1878) ....................................................................22

California v. Texas, 141 S. Ct. 2104 (2021)............................................................37

Club Madonna Inc. v. City of Miami Beach, 42 F.4th 1231
(11th Cir. 2022) ................................................................ 6, 32, 36

Cocke v. Hannum, 39 Miss. 423 (1860)..................................................................24

Doe v. City of Albuquerque, 667 F.3d 1111 (10th Cir. 2012) ...............................32

Doe v. Harris, 772 F.3d 562 (9th Cir. 2014)...........................................................17

Doe v. Marshall, 367 F. Supp. 3d 1310 (M.D. Ala. 2019 .......................................17

Doe v. Marshall, No. 15-CV-606-WKW [WO], 2018 WL 1321034
(M.D. Ala. Mar. 14, 2018)....................................................................18

Doe v. Reed, 561 U.S. 186 (2010)...........................................................................33

Doe v. Strange, No. 2:15-cv-35161, 2014 WL 1079153
(M.D. Ala. Mar. 18, 2016)......................................................................6

Dumain v. Gwynne, 92 Mass. 270 (1865)...............................................................23

Eknes-Tucker v. Governor of Alabama, 80 F.4th 1205 (11th Cir. 2023) ..............20

Finnegan v. Comm'r, 926 F.3d 1261 (11th Cir. 2019)...........................................20

Georgia v. President of the United States, 46 F.4th 1283 (11th Cir. 2022) ...........37

Gill v. Whitford, 548 U.S. 48 (2018)................................................................37

Iancu v. Brunetti, 139 S. Ct. 2294 (2019)........................................................38

In re Cuneen, 17 How. Pr. 516 (N.Y. Sup. Ct. 1859).......................................22

Johnson v. United States, 576 U.S. 591 (2015) ................................................32

L.M.L. v. Alabama, 2022 WL 1721575 (Ala. Crim. App. 2022)..........................34

Lehr v. Robertson, 463 U.S. 248 (1983).................................................... 19, 36

Matter of Pima County., Juvenile Action Nos. S-826 and J59015,

     643 P.2d 736 (Ariz. Ct. App. 1982) ..............................................................25

McCullen v. Coakley, 573 U.S. 464 (2014) ......................................................28

McGuire v. Marshall, 512 F. Supp. 3d 1189 (M.D. Ala. 2021) ................................8

McKune v. Lile, 536 U.S. 24 (2002) ..................................................................2

Michael H. v. Gerald D., 491 U.S. 110 (1989)............................................. 19, 36

Miller v. Alabama, 567 U.S. 460 (2012) ...........................................................34

Miner v. Miner, 11 Ill. 43 (1849)......................................................................22

Moore v. City of E. Cleveland, 431 U.S. 494 (1977)..........................................17

Moore v. City of E. Cleveland, 431 U.S. 494 (1997)..........................................36

Packingham v. North Carolina, 583 U.S. 98 (2017)............................................17

Reed v. Town of Gilbert, 576 U.S. 155 (2015) ..................................................27

Reno v. Flores, 507 U.S. 292 (1993) .................................................................6

Roberts v. United States Jaycees, 468 U.S. 609 (1984) .................................. 17, 35

Santosky v. Kramer, 455 U.S. 745 (1982)..........................................................31

Solantic, LLC v. Neptune Beach, 410 F.3d 1250 (11th Cir. 2005).........................7

Stanley v. Illinois, 405 U.S. 645 (1972) ....................................................... 19, 31

Taylor v. Charter Medical Corp., 162 F.3d 827 (5th Cir. 1998) ...........................10

Trawick v. Trawick, 173 So. 2d 341 (La. Ct. App. 1965).....................................23

Troxel v. Granville, 530 U.S. 57 (2000) ....................................................... 16, 18

v

Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622 (1994) ...........................................28

United States v. Bear, 769 F.3d 1221 (10th Cir. 2014) .................................. 17, 23

United States v. Davis, 452 F.3d 991 (8th Cir. 2006) ..................................... 17, 23

United States v. Dell Valle-Cruz, 785 F.3d 48 (1st Cir. 2015); ...................... 18, 23

United States v. Hansen, 143 S. Ct. 1932 (2023) ...................................................33

United States v. Jones, 29 F.3d 1549 (11th Cir. 1994)...........................................10

United States v. Kebodeaux, 570 U.S. 387 (2013) ...................................................2

United States v. Loy, 237 F.3d 251 (3d Cir. 2001) ................................................23

United States v. Quinn, 698 F.3d 651 (7th Cir. 2012)................................... 17, 23

United States v. Salerno, 481 U.S. 739 (1987).......................................................32

United States v. Voelker, 489 F.3d 139 (3rd Cir. 2007).................................. 18, 23

United States v. Widmer, 785 F.3d 200 (6th Cir. 2015)............................ 18, 23, 30

United States v. Worley, 685 F.3d 404 (4th Cir. 2012)................................... 18, 23

Williams v. Attorney General of Alabama, 378 F.3d 1232 (11th Cir. 2004).........20

Yarbrough v. Decatur Hous. Auth., 941 F.3d 1022 (11th Cir. 2019).....................14

**Federal Statutes**

34 U.S.C. § 20911 et seq. Federal Sex Offender and Notification Act....................8

42 U.S.C. § 1983 .....................................................................................................7

**State Statutes**

ALA. CODE § 13A-6-125 .........................................................................................34

ALA. CODE § 13A-6-61(a)(3).................................................................................34

ALA. CODE § 15-20A-11(d) ...................................................................................38

Ala. Code § 15-20A-11(d)(1) ..................................................................................9

Ala. Code § 15-20A-11(d)(2) ..................................................................................9

Ala. Code § 15-20A-11(d)(3) ..................................................................................9

Ala. Code § 15-20A-11(d)(5) .................................................9

Ala. Code § 15-20A-4(14) ...................................................27

Ala. Code § 15-20A-4(20) ...................................................27

Ala. Code § 20A. Alabama Sex Offender Registration

and Community Notification Act (ASORCNA)......................................1

ALA. CODE §§ 15-20A-4(27) ..................................................4

ALA. CODE §15-20A-4(2) .....................................................4

ALA. CODE §15-20A-5(14) ....................................................4

ARIZ. REV. STAT. § 8-533(B)(4) .............................................25

MINN. STAT. § 260C.503......................................................26

MINN. STAT. § 260C.511......................................................25

MINN. STAT. § 260C.521......................................................25

MINN. STAT. §§ 260C.509.................................................. 25, 31

MISS. CODE ANN. § 93-15-121............................................. 24, 26, 31

MO. REV. STAT. § 210.117....................................................26

MO. REV. STAT. § 211.444....................................................25

WIS. STAT. § 48.254..................................................... 24, 31

**Treatises**

1 WILLIAM BLACKSTONE, COMMENTARIES ...........................................20

2 JAMES KENT, COMMENTARIES ON AMERICAN LAW 201

(10th ed. Boston, Little, Brown & Co. 1860) ..................................22

2 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE

AS ADMINISTERED IN ENGLAND AND AMERICA § 1341 (2d ed. 1839)...................21

JAMES SCHOULER, LAW OF THE DOMESTIC RELATIONS § 246 (1905)....................21

TIFFANY, HANDBOOK § 126 .....................................................21

WALTER C. TIFFANY, HANDBOOK ON THE LAW OF PERSONS

AND DOMESTIC RELATIONS 346 (3d ed. 1921)................................................21

**Constitutional Provisions**

U.S. CONST. amend. XIV .......................................................................17

**Other Authorities**

Ellman, Ira Mark and Ellman, Tara, "Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics, 30 CONSTITUTIONAL COMMENTARY 419 (2015) ...............................................................2

Joyal, C.C. & Carpentier, J., The Prevalence of Paraphilic Interests and Behaviors in the General Population: A Provincial Survey, THE JOURNAL OF SEX RESEARCH 54(2), 161-171 (2017).................................................29

Maaike Helmus, Angela Eke, Linda Farmus & Michale Seto, The CPORT and Risk Matrix 2000 for Men Convicted of Child Sexual Exploitation Material (CSEM) Offenses: A Predictive Accuracy Comparison and Meta-Analysis, 51 CRIM. JUSTICE AND BEHAVIOR, (2024) .....................................14

Marc E. Isserles, Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement, 48 Am. U. L. Rev. 359, 387 (1998)........................................32

Philip M. Genty, Procedural Due Process Rights of Incarcerated Persons in Termination of Parental Rights Proceedings: A Fifty State Analysis, 30 J. FAM. L. 757 (1991) .............................................................. 25, 26

This case poses the question whether the State of Alabama can impose a lifetime, non-appealable ban on living with one's own children based solely on the fact of a qualifying conviction – regardless of the individual facts or circumstances of the underlying crime, regardless of how long ago the crime was committed or how old the individual who committed the crime, regardless of whether the individual has fully completed his or her criminal sentence, regardless of demonstrated rehabilitation, and regardless of any determination that living with the parent is in the best interest of the child.

"The overbreadth of § 15-20A-11(d)(4) is breathtaking." Doc. 150 (Op. and Order) at 13. As Defendants conceded below, there is no historical precedent for such a sweeping abrogation of fundamental parental rights. Doc. 131 (Defs. Suppl. Br.) at 1-3 ("Aside from ASORCNA [the Alabama Sex Offender Registration and Community Notification Act], it does not appear that Alabama has ever statutorily limited parents' contact or ability to live with their own children based on the fact of conviction or another single fact."); see also Doc. 150 (Op. and Order) at 6 ("The parties and the Court are unaware of any statute enacted by another state substantially similar to § 15-20A-11(d)(4).").

There is a gross public misperception that sex offenders as a class are somehow sui generis – uniquely likely to recidivate and not amenable to

rehabilitation. But setting aside wild claims and 20-year-old unsubstantiated dicta,[1] it is simply a fact that the rate of sexual recidivism for sex offenders as a class is low generally. <u>Compare</u> Doc. 101-11 (Dr. Hersh Rep.) at 5 <u>with</u> Doc. 86-11 (Dr. DeLisi Report) at 18 (both noting sexual recidivism rates of 3-6% over 3 to 5 years). For child pornography offenders it is lower still. Doc. 101-9 (Dr. Helmus Rpt.) at 68 (chart summarizing all research on recidivism of child pornography offenders).

It is also a fact that the <u>rate</u> of sexual recidivism decreases with time – that is, for individuals who have lived offense free in the community for five (5) years, a much lower percentage will go on to recidivate. Doc. 101-12 (Hersh Dep.) at 73:15-74:49; Doc. 101-13 (Hersh Test.) at 38-41. After approximately ten (10) years the risk of sexual recidivism for a prior sexual offender becomes the same as the risk of a sexual crime committed by an offender with no prior sexual offense. Doc. 101-14 (Summary Exhibit).

---

[1] In <u>McKune v. Lile</u>, 536 U.S. 24, 33-34 (2002), the Supreme Court made the factual error of referring to sex offender recidivism as "frightening and high." This statement was ill-founded at the time and has now been thoroughly debunked by twenty years of research. For historical review of how this phrase came to be included, see Ellman, Ira Mark and Ellman, Tara, <u>"Frightening and High": The Supreme Court's Crucial Mistake About Sex Crime Statistics</u>, 30 CONSTITUTIONAL COMMENTARY 419 (2015). The Supreme Court itself has since disclaimed it as a basis for opinion. <u>See</u> <u>United States v. Kebodeaux</u>, 570 U.S. 387, 395-96 (2013) (noting that research shows "sex offenders have relatively low rates of recidivism").

Defendants would discount these realities, arguing that "sex crimes against children are underreported and difficult to detect." Aplt. Br. at 1. But, as Defendants' expert concedes, thanks to decades of public education, government research shows that the large majority of sexual abuse against children becomes known to authorities. Doc. 86-13 (DeLisi Dep.) at 188:4-190:2, 159:3-19; <u>see also</u> Doc. 101-16 (Helmus Dep.) at 76:1-77.17. Defendants argue there are some offenders with significant undetected criminal histories (Aplt. Br. at 4, 9-10), but, as Defendants' expert agrees, one can identify such individuals and account for this behavior in assessing risk. Doc. 86-13 (DeLisi Dep.) at 169:6-170:2. As <u>every</u> expert in this case agrees (three for Plaintiff and two for Defendants), it is possible to assess the individualized risk associated with a person convicted of a sex offense. <u>See</u> Doc. 86-13 (Delisi [Defendants' Expert]) at 28:16-29:15; Doc. 86-14 (Scurich [Defendants' Expert]) at 36:9-37:10; Doc. 86-17 (Helmus [Plaintiff's Expert]); Doc. 86-18 (Hersh [Plaintiff's Expert]) at 116:16-117:18; Doc. 86-15 (Burkhart [Plaintiff's Expert]) at 191:8-193:22.

It does not then "follow," as Defendants would have it, that § 15-20A-11(d)(4), the statute challenged in this case, is "necessary" to protect children.[2]

---

[2] Alabama Code § 15-20A-11(d)(4) prohibits anyone convicted of a "sex offense involving a child" from residing or conducting overnight visits with their own minor children. Under Alabama law, "sex offense involving a child" includes any sex offense against a victim under 12 years old or any child pornography offense

Aplt. Br. at 2. No single fact about a parent (absent any history or context, absent consideration of time, or of any subsequent rehabilitation or other future conduct) is sufficient to conclude that the parent is conclusively and forever so dangerous that they can never reside with their own minor children. For this reason, with the singular historic exception of this statute, an abrogation of parental rights takes place only at an individualized hearing in which the totality of the circumstances is considered. While <u>some</u> individuals convicted of a qualifying sex offense may forever be so dangerous that the State is justified in preventing them from living with their own minor children, some are not. Ultimately, that is the point – it takes a hearing to figure out who is who.

Mr. Henry's case demonstrates this. Even Defendants do not truly argue that the simple fact of Mr. Henry's conviction justifies application of § 15-20A-11(d)(4). Instead, each time they discuss Mr. Henry, they point to the details of his offense conduct and his behavior on supervised release. Aplt. Br. at 2, 10-12. This argument itself shows that the district court was correct. <u>See</u> Doc. 150 (Op. and Order) at 13 ("[T]he State's argument looks beyond the mere fact of conviction to

---

depicting a victim under age 17. ALA. CODE §§ 15-20A-4(27); 15-20A-4(2); 15-20A-5(14).

justify the lifetime restriction and therefore engages in the sort of tailoring the statute lacks.").[3]

This is a straightforward case. Uniquely in American history, Alabama Code § 15-20A-11(d)(4) imposes a lifetime, non-appealable ban on living with one's own children based solely on the fact of a qualifying conviction. It is therefore subject to strict scrutiny. As the district court correctly found, it cannot meet this test and is therefore properly enjoined. This case is not, as Defendants assert, about "whether <u>all</u> convicted sex offenders – no matter the severity of their crimes against children – are constitutionally entitled to reside or spend the night with their minor children." Aplt. Br. at 1. The State has at its disposal myriad, constitutional ways to protect children. The dispositive issue in this case is much more simple – Does § 15-20A-11(d)(4) pass strict scrutiny? The answer is also simple – it does not.

## STATEMENT OF THE ISSUES

Properly framed, there are three issues on appeal:

---

[3] As explained by Plaintiff's experts below, Mr. Henry's risk of committing another sexual offense, much less a contact offense against his own child, is negligible. <u>See generally</u> Doc. 100 (Plt. Br. Sum. Judg.) at 28-29. Defendants have never sought to evaluate Mr. Henry nor proffered any expert qualified to assess his risk. <u>Id.</u> at 29, n. 25.

1. Do persons convicted of criminal offenses that fall under Alabama Code § 15-20A-11(d)(4) have parental rights?

2. If so, is Alabama Code § 15-20A-11(d)(4) a constitutional abrogation of those rights?

3. Was the trial court correct to declare Alabama Code § 15-20A-11(d)(4) facially invalid and issue the corresponding declaratory and injunctive relief?

Defendants would frame the issues differently. They frame their first issue as whether § 15-20A-11(d)(4) "can be applied constitutionally to at least one sex offender." Aplt. Br. at 6. However, this Court has specifically rejected that argument. Club Madonna Inc. v. City of Miami Beach, 42 F.4th 1231, 1256 (11th Cir. 2022); see also Doc. 61 (Mem. Op. and Ord.) at 11-19 (providing detailed analysis). At issue in this case is whether the statute "satisfies the appropriate constitutional framework." Club Madonna, 42 F.4th at 1256 (citation omitted); see also Doc. 61 (Mem. Op. and Ord.) at 23. Given that § 15-20A-11(d)(4), on its face, places severe burdens on a parent's custodial rights, it must meet strict scrutiny. See Doe v. Strange, No. 2:15-cv-35161, 2014 WL 1079153, at *13 (M.D. Ala. Mar. 18, 2016) (citing Reno v. Flores, 507 U.S. 292, 302 (1993)). Under this standard, Defendants bear the burden of proving that the statute both serves a

compelling government interest and employs the least restrictive means of doing so. <u>Solantic, LLC v. Neptune Beach</u>, 410 F.3d 1250, 1258 (11th Cir. 2005).

Defendants frame their second, and final, issue as "whether the district court exceeded its Article III authority and/or abused its discretion when it issued a universal injunction barring any application of § 15-20A-11(d)(4)[.]" Aplt. Br. at 6. But Defendants cite no case or other authority for the proposition that a district court lacks Article III authority to declare invalid a state statute that fails strict scrutiny.

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition in the Court Below

This action was brought pursuant to 42 U.S.C. § 1983 alleging that Alabama Code § 15-20A-11(d)(4) violates the First Amendment right to intimate association, and the Fourteenth Amendment rights to the "care, custody, and control of one's children" and to equal protection. Doc. 1 (Compl.) at 12-20. Each of these challenges was facial and as applied. Plaintiff sought declaratory and injunctive relief. <u>Id.</u> at 12-21.

After denial of Defendants' Motion to Dismiss (Doc. 61 (Mem. Op. and Order)), the Parties conducted discovery and submitted cross-motions for summary judgment. Docs. 99 (Plt.) and 94 and 102 (Defs.). After hearing on the motions, the district court <u>granted</u> Plaintiff's motion in part – "with respect to Plaintiff's facial

challenge to Alabama Code § 15-20A-11(d)(4) under the Due Process Clause of the Fourteenth Amendment to the United States Constitution" – and denied Plaintiff's remaining claims as moot. Doc. 150 (Op. and Order) at 18. The district court denied as moot all remaining motions (including Defendants' motions for summary judgment). Id. Before this Court, Defendants appeal the district court's grant of partial summary judgment to Plaintiff.

### B. Statement of Facts

#### i. The Scope of Alabama Code § 15-20A-11(d)(4)

The Alabama Sex Offender Registration and Community Notification Act (ASORCNA) is "the most comprehensive and debilitating sex-offender scheme in the nation." McGuire v. Marshall, 512 F. Supp. 3d 1189, 1198 (M.D. Ala. 2021). It "affects virtually every aspect of registrant's lives." Id. Alabama does much more than "regulate sex offenders." Aplt. Br. at 6. It subjects them to a uniquely harsh regime of restrictions and controls.[4]

The statute at issue in this case, Alabama Code § 15-20A-11(d)(4), is a unique restriction. Doc. 150 (Op. and Order) at 6. No other state imposes an

---

[4] Contrary to Defendants' suggestion (Aplt. Br. at 7), these restrictions do not flow from, and are not even analogous to, federal requirements. ASORCNA goes far beyond the requirements of the Federal Sex Offender and Notification Act (federal SORNA). See generally 34 U.S.C. §§ 20911 – 20932. Federal SORNA is limited to the collection of information about sex offenders. See id. It contains no restrictions on employment, residence, parental rights, or any other affirmative restraints. See id.

automatic, lifetime, non-appealable ban on living with one's own children based solely on the fact of any criminal conviction.

Under the statute, any person convicted of a qualifying offense (any sex offense against a victim who was under 12 years old or of any child pornography offense depicting a victim under age 17) is forever prohibited from "being present in the family home where his minor child resides in the following circumstances: (1) at any time between the hours of 10:30 p.m. and 6:00 a.m.; (2) for more than four hours a day on three consecutive days; (3) for more than four hours a day on ten or more days during the calendar months; and (4) in any other circumstance in which the parent is 'habitually and systematically present' at the minor's home." Id. at 5-6.[5] Section 15-20A-11(d)(4) "applies for life, without relief, no matter the circumstances that led to the conviction, regardless of how the circumstances may have changed in the months, years, or decades following the conviction." Doc. 150 (Op. and Order) at 13.

At the same time, the types of offenders Defendants highlight in their Brief – those that have committed an offense involving forcible compulsion, or an offense against a close relative or a minor residing with them – are prevented from living with minor children by other provisions of the Alabama Code not at issue in this case. See §§ 15-20A-11(d)(1)-(3) and (5). Section 15-20A-11(d)(4) is a catch-all

---

[5] The trial court's opinion fully lays out the statutory scheme. Doc. 150 (Op. and Order) at 4-6.

for individuals convicted of non-forcible offenses committed against minors not closely related to and who did not live with the offender.

ii. *The Risk Posed by Sex Offenders as a Class*

Defendants suggest that the scope of § 15-20A-11(d)(4) is justified because "known sex offenders pose a unique threat to society." Aplt. Br. at 8-10. As shown above, this is simply not correct. <u>Infra</u> at 1-3. As a result, Defendants are forced to rely generally not on substantiated facts but on quotes to stray <u>dicta</u> in various cases.[6] <u>See generally</u> Aplt. Br. at 8, 21, 36-37. To the extent Defendants do assert facts regarding child sexual abuse, they tend to be in the form of isolated statements stripped of even the context given by their own expert.

As Defendants' expert Dr. DeLisi acknowledges, contemporary research shows that most child sexual abuse is brought to the attention of authorities. Doc. 86-13 (DeLisi Dep.) at 188:14-190:2. Dr. DeLisi also acknowledges that while possession of child pornography is correlated with pedophilia, it is <u>more</u> correlated with pornography addiction (<u>id.</u> at 63:11-66:11), and that the studies he relies on find that "child pornography only offenders [like Mr. Henry] have low rates of

---

[6] The factual findings of other courts may not be relied upon to meet a party's burden of proof in a given case. <u>United States v. Jones</u>, 29 F.3d 1549, 1553 (11th Cir. 1994); <u>see also</u> <u>Taylor v. Charter Medical Corp.</u>, 162 F.3d 827, 830 (5th Cir. 1998) (noting agreement among Circuits).

sexual contact offenses, and this remains true even based on confidential self-reporting in a relationship of trust." Id. at 159:1-19.

Dr. DeLisi also concedes that "after ten to fifteen years, most individuals with a history of sex offenses [are] no more likely to commit a new sexual offense than individuals with a criminal history that did not include sexual offenses." Doc. 86-11 (DeLisi Report) at 17 (emphasis added); see also Doc. 101-9 (Helmus Report) at 12-14 (explaining "time to redemption"). At deposition, he further conceded both that his claims about undetected sexual offenses were not based on studies of recidivism and that he did not know what assumptions were made in the article upon which he bases his statement that "sexual recidivism estimates can be between two and ten times greater than re-arrest and re-conviction rates." Doc. 58 (Transcript, vol. 2) at 32:23-33:21; Doc. 86-13 (DeLisi Depo.) at 13:17-14:5; 166:2-168:7. In contrast, Plaintiff's expert gives a thorough explanation of the effect of undetected acts on observed recidivism rates. Doc. 101-9 (Helmus Rep.) at 18-23.

Defendants also misstate the content of Dr. DeLisi's report. Defendants assert that "child pornography consumption is the only type [of pornography] associated with and predictive of sexual abuse of children." Aplt. Br. at 10. However, the portion of Dr. DeLisi's report cited to support this claim says no such thing. See Doc. 86-11 (DeLisi Rep.) at 14-15; see also Doc. 101-9 (Helmus

Rep.) at 15-16 (explaining relationship of pornography consumption to recidivism). Finally, Defendants' assertion that "the majority of child porn offenders have undetected contact victims, undetected sex crime offenses, and continue to offend with the use of child porn/child erotica even while in sex offender treatment" is simply not supported by competent evidence. Aplt. Br. at 10. The single support for that statement is a non-peer reviewed, "review article" by a "forensic consultant." See Doc. 86-11 (DeLisi Rep.) at 25.

### iii. *Mr. Henry*

Defendants next engage in a recitation of Mr. Henry's personal history. This recital is substantially accurate, but that Defendants feel these facts should be brought to the attention of this Court simply proves Plaintiff's point. Defendants focus on the details of Mr. Henry's offense conduct and his subsequent behavior to argue that he is dangerous. This can only mean that they realize that the fact of conviction alone is insufficient.

Defendants expend four (4) pages of their Brief noting that the district court did not issue a preliminary injunction in this case. In those four pages, they fail to note that the Court declined to issue a preliminary injunction because of the extraordinary nature of such relief, concerns about specific facts regarding Mr. Henry, and because the Court had not heard from Mr. Henry, his wife, or his probation officer. See Doc. 62 (Mem. Op. and Order) at 30-35. The Court made

clear that its decision was an exercise in caution given the then undeveloped evidentiary record. See id. at 37-38. A year later, at hearing on the cross-motions for summary judgment, Defendants had still failed to produce any evidence to rebut Plaintiff's three, separate expert opinions that Mr. Henry will not be a threat to his own minor son if allowed to live with his family.[7]

### iv.    Risk Assessment

Defendants further argue that "no reliable method exists to identify child sex offenders who can safely reside with their children." Aplt. Br. at 16. This assertion is contradicted by the record. As noted above, every expert in this case (three for Plaintiff and two for Defendants) agrees that is possible to assess the individualized risk associated with an individual convicted of a sex offense. See Doc. 86-13 (Delisi) at 28:16-29:15; Doc. 86-14 (Scurich) at 36:9-37:10; Doc. 86-17 (Helmus); Doc. 86-18 (Hersh) at 116:16-117:18; Doc. 86-15 (Burkhart) at 191:8-193:22.

---

[7] Defendants state that, in response to Plaintiff's Motion for Preliminary Injunction, they "offered an expert criminologist to rebut testimony about the risk posed by child sex offenders, generally, and Henry, specifically." Aplt. Br. at 14. That expert, Dr. DeLisi, was found by the trial court to be "not qualified" to rebut Plaintiff's testimony regarding the risks posed by child pornography offenders generally or the risk posed by Mr. Henry personally. See Doc. 62 (Mem. Op. and Order) at 29-30. Since the preliminary injunction stage, Defendants have not proffered any other expert who would be so qualified.

The primary dispute regarding risk assessment is whether a particular instrument, the "CPORT," can be used on child pornography offenders located in the United States who have no history of contact offenses. Compare Doc. 86-12 (Scurich Rep.) with Doc. 101-9 (Helmus Rep.) at 23-29.[8] This dispute, however, was created only after Defendants' initial expert, Dr. DeLisi, testified that the CPORT was a valid instrument for predicting recidivism of child pornography offenders. Doc. 86-13 (DeLisi Dep.) at 147:8-148:17. Defendants then hired a second expert, Dr. Scurich, to contradict Dr. DeLisi's testimony. See Doc. 86-12 (Scurich Rep.). Moreover, as Dr. Helmus makes clear, there is a variety of risk assessment tools that can be used (and which show Mr. Henry to be low risk). Doc. 101-9 (Helmus Rep.) at 30-31. Defendants have proffered no evidence to rebut Dr. Helmus's findings.

### C. Standard of Review

This Court "review[s] a district court's order on summary judgment de novo, applying the same legal standards used by the district court." Yarbrough v. Decatur Hous. Auth., 941 F.3d 1022, 1026 (11th Cir. 2019) (internal quotation and citation

---

[8] Subsequent to Dr. Scurich's report and the trial court's decision, additional, peer-reviewed research has been published further validating the CPORT. See Maaike Helmus, Angela Eke, Linda Farmus & Michale Seto, The CPORT and Risk Matrix 2000 for Men Convicted of Child Sexual Exploitation Material (CSEM) Offenses: A Predictive Accuracy Comparison and Meta-Analysis, 51 CRIM. JUSTICE AND BEHAVIOR, Jan. 2024, at 3-23 (2024).

omitted). The scope of injunctive relief granted by the district court is reviewed for abuse of discretion. <u>Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.</u>, 522 F.3d 1200, 1208 (11th Cir. 2008).

## SUMMARY OF THE ARGUMENT

This is a straightforward case. Alabama Code § 15-20A-11(d)(4) severely burdens a parent's right to the "care, custody, and control of their children" (as well as the right to cohabitate with one's relatives). In light of these burdens, it is subject to strict scrutiny analysis, under which the State must prove that the statute is "narrowly tailored" – that it is the least restrictive means of achieving the State's interest. Since the statute could be more narrowly tailored by requiring a hearing prior to abrogating parental rights, it necessarily fails strict scrutiny. Since the statute fails strict scrutiny, it is facially invalid.

Defendants argue that parents convicted of crimes do not have parental rights. However, this argument is belied by the very treatises, cases, and statutes upon which Defendants rely. Nor is there a "historical tradition" of unilaterally imposing a lifetime, non-appealable ban on living with one's own children based solely on the fact of a criminal conviction. Section 15-20A-11(d)(4) appears to be unique in American history.

Defendants' separate argument – that the statute is valid because it could be constitutionally applied to <u>some</u> parents – is also unavailing. The existence of a

hypothetically constitutional application of the statute (even if there were one), would not save the statute.

The district court's reasoning, as thoroughly laid out in its Opinion and Order, is correct, as is the declaratory and injunctive relief issued.

## ARGUMENT

As shown below, American law has long recognized that persons convicted of a crime retain their parental rights, and that these rights may only be abrogated through an individualized hearing that considers both the facts and circumstances of the specific situation and the best interests of the child. Alabama Code § 15-20A-11(d)(4) fails constitutional review because it does not require (or even allow) such a hearing. It is doubtful whether there is any circumstance under which § 15-20A-11(d)(4) could be constitutionally applied, but even if there were, the statute would still be invalid. Having concluded that § 15-20A-11(d)(4) fails constitutional review, the district court properly enjoined enforcement of the statute.

### A. There is No "Except-for-Sex-Offenders" Rule in the Constitution

The right at issue in this case is the right of parents to the "care, custody, and control" of their children. Doc. 150 (Op. and Ord.) at 7-8. As Judge Huffaker noted, that right is "perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court]." Id. at 8 (citing Troxel v. Granville, 530 U.S. 57, 65 (2000)). This right has been continually affirmed. See generally, id.

16

(collecting cases). "From the founding, it has been the right and prerogative of parents in this country to live with their children." Doc. 150 at 9 (Op. and Order) (citing <u>Moore v. City of E. Cleveland</u>, 431 U.S. 494, 499, 504-06 (1977) (plurality opinion)).[9]

Constitutional rights are held by "the people." <u>See, e.g.</u>, U.S. CONST. amend. XIV (referring to the rights of "persons"). There is no textual basis in the Constitution for limiting rights only to certain classes of people, nor is there any historical tradition that persons convicted of crimes (sexual or otherwise) are outside the ambit of constitutional protection.[10] <u>Doe v. Marshall</u>, 367 F. Supp. 3d 1310, 1339 (M.D. Ala. 2019) (citing <u>Doe v. Harris</u>, 772 F.3d 562, 572 (9th Cir. 2014)) (<u>accord</u> <u>Packingham v. North Carolina</u>, 583 U.S. 98, 107 (2017)). Thus, courts that have considered the question have universally found that persons convicted of sex offenses have parental rights. <u>See</u> <u>Harris</u>, 772 F.3rd at 572; <u>see also, e.g.</u>, <u>United States v. Bear</u>, 769 F.3d 1221, 1229 (10th Cir. 2014); <u>United States v. Quinn</u>, 698 F.3d 651, 652 (7th Cir. 2012) (Easterbrook, C.J.); <u>United States v. Davis</u>, 452 F.3d 991, 995 (8th Cir. 2006); <u>United States v. Dell Valle-</u>

---

[9] As separately noted by the trial court, § 15-20A-11(d)(4) <u>also</u> places severe burdens on the First Amendment associational right to "cohabitat[e] with one's relatives." Doc. 150 (Op. and Ord.) at 9 (citing <u>Roberts v. United States Jaycees</u>, 468 U.S. 609, 619 (1984)).

[10] As shown <u>infra</u>, none of the treatises, cases, or statutes cited by Defendants suggest that persons convicted of crimes are outside the protection of the First and Fourteenth Amendment.

Cruz, 785 F.3d 48, 51-52, 62-63 (1st Cir. 2015); United States v. Worley, 685 F.3d 404, 408 (4th Cir. 2012); United States v. Voelker, 489 F.3d 139, 154-55 (3rd Cir. 2007); United States v. Widmer, 785 F.3d 200, 208 (6th Cir. 2015). In five of these cases (Davis, Myer, Voelker, Widmer, and Quinn) the individual had, like Mr. Henry, been convicted of possession or receipt of child pornography.[11] There is no "except-for-sex offenders" rule under the Constitution. Doe v. Marshall, No. 15-CV-606-WKW [WO], 2018 WL 1321034, at *19 (M.D. Ala. Mar. 14, 2018).

Without addressing any of these cases, Defendants argue that only "fit" parents have a right to the care, custody, and control of their children. Aplt. Br. at 23-25. But this argument "conflates the identification of the right at issue with the tailoring analysis." Doc. 150 (Op. and Order) at 7. As the district court put it, "the State would have the tail wag the dog" by taking what is to be proven (that a given parent is "unfit") and inserting it into the description of the right itself. See Doc. 150 (Op. and Order.) at 11.

The cases cited by Defendants do not undermine this straightforward conclusion. In Troxel v. Granville, 530 U.S. 57, 66-67 (2000), the Court again

---

[11] Defendants argue that there is no "binding precedent recogniz[ing] the right of child sex offenders to reside with or have overnight access with their children." Aplt. Br. at 23. This is perhaps technically correct, but completely ignores the existing consensus on the issue. Moreover, there is no such binding precedent simply because no State has previously tried to enact a statute that abrogates the parental rights of persons convicted of a crime wholesale.

affirms "the fundamental right of <u>parents</u> to make decisions concerning the care, custody, and control of their children." <u>Id.</u> (collecting cases) (emphasis added). The case does not suggest that this right is definitionally limited to "fit" parents. Rather, it suggests that the State can abrogate this right only if the parent has been determined to be "unfit." <u>See</u> <u>id</u> at 67. In <u>Stanley v. Illinois</u>, 405 U.S. 645, 654 (1972), the Court rejected the idea that the State can categorically deny parental rights based on membership in a class. As the Court noted, even if "most" members of the class are unfit parents, <u>some</u> are not; and, therefore, all of them are entitled to a hearing before their parental rights can be abrogated. <u>Id.</u> at 654-55. In <u>Michael H. v. Gerald D.</u>, 491 U.S. 110, 123-24 (1989) (plurality opinion), the Court did not hold, as Defendants argue, that "adulterous natural fathers" do not have parental rights. It found that biological fathers could not assert parental rights in contravention of the parental rights of the presumptive father. <u>Id.</u> In doing so, the Court noted the "sanctity" of the "unitary family" – precisely what § 15-20A-11(d)(4) intrudes upon. Similarly, in <u>Lehr v. Robertson</u>, 463 U.S. 248, 261-62 (1983), the Court found that a putative father could not assert parental rights in contravention of the adoptive father – again noting the importance of "intimate daily association." As these two cases emphasize, a statute that works precisely to

disrupt the daily association of the unitary family necessarily burdens fundamental constitutional rights.[12]

Defendants next argue that there is "an enduring historical tradition of denying child custody to cruel parents who feloniously abuse children." Aplt. Br. at 28-40.[13] But each of the treatises, cases, and statutes cited by Defendants merely confirms that persons convicted of crimes have always been within the ambit of constitutional protection, and that, historically, parental rights have never been abrogated based solely on the fact of conviction. There is no "historical tradition" of unilaterally imposing a lifetime, non-appealable ban on living with one's own children based solely on the fact of conviction and regardless of the attendant circumstances and the best interest of the child.

As early as Blackstone, commentators have recognized that the law has a special solicitude for the parent-child relationship. 1 WILLIAM BLACKSTONE, COMMENTARIES *437-40 (the relationship between parent and child is the most "universal relation in nature"). Each of the commentators cited by Defendants

---

[12] Defendants' Brief appears to suggest that Eknes-Tucker v. Governor of Alabama, 80 F.4th 1205, 1221 (11th Cir. 2023), and Williams v. Attorney General of Alabama, 378 F.3d 1232, 1239 (11th Cir. 2004), concern the parental rights of persons convicted of crimes. Aplt. Br. at 27. Neither does. See Eknes-Tucker, 80 F.4th at 1224 (concerning right to treat one's children with gender-transitioning medications); Williams, 378 F.3d at 1235 (concerning "right to sexual privacy").

[13] Defendants did not make this argument before the trial court. This argument then may properly be considered waived. See, e.g., Finnegan v. Comm'r, 926 F.3d 1261, 1271 (11th Cir. 2019) (noting "general rule" that the appellate court will not consider an issue raised for the first time on appeal).

reaffirms the fundamental right of a parent (or, more specifically, the father in these sources) to the custody of his child. See, e.g., 2 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE AS ADMINISTERED IN ENGLAND AND AMERICA § 1341 (2d ed. 1839) (noting "the ordinary rights of parents by nature, or by nurture, in regard to the custody and care of their children"); WALTER C. TIFFANY, HANDBOOK ON THE LAW OF PERSONS AND DOMESTIC RELATIONS 346 (3d ed. 1921) (noting that "the right of the father to custody of his minor child is absolute except in the case of the most flagrant unfitness"). Each source notes that the State may interfere with a father's right to custody only in cases of extreme unfitness and only when such interference is in the best interest of the child. See, e.g., JAMES SCHOULER, LAW OF THE DOMESTIC RELATIONS § 246 (1905) ("The Court of Chancery will interfere to disturb the parental rights only in cases of the father's gross misconduct; such misconduct seeming, however, to be regarded with reference rather to the interests of the child than the moral delinquency of the parent."); TIFFANY, HANDBOOK § 126 ("The courts consider not only the fitness of the persons contending for custody, but the condition and future prospects of the child, and the wishes of the child where it is old enough to decide intelligently.")

Each commentator presumes that the court will exercise the authority to interfere in custodial rights only with great circumspection and only upon consideration of all the relevant factors. See, e.g., STORY, COMMENTARIES § 1342

(interference in custodial rights a matter of "extreme delicacy and of no inconsiderable embarrassment and responsibility"); 2 JAMES KENT, COMMENTARIES ON AMERICAN LAW 201 n.2 (10th ed. Boston, Little, Brown & Co. 1860) (noting that the authority of the court to abrogate custody rights rests in its ability to consider all of the attendant factors to determine the best interests of the child). And none of the commentators suggest, and there is no historical sanction within them for the proposition, that the State may unilaterally declare a class of persons not just presumptively, but conclusively, unfit to have custody of their minor children.

The cases cited by Defendants further bear this out. Each of the cases cited is a custody proceeding at which the court looked at all the attendant circumstances to determine whether the father is a fit parent, and, in each, the misconduct of the parent considered is misconduct towards or in the presence of the children themselves. See, e.g., In re Cuneen, 17 How. Pr. 516 (N.Y. Sup. Ct. 1859) (father engaging is tyrannical and abusive conduct and failing to support children); Boggs v. Boggs, 49 Iowa 190, 192 (1878) (hitting daughter on head with a hoe and allegedly nearly beating son to death); Miner v. Miner, 11 Ill. 43, 49 (1849) (court looking to the "best interests of the child"); see also KENT, COMMENTARIES at 201 n.2 (noting that "at chancery, a court may consider only personal ill-usage to the child" as a grounds for abrogating custody rights).

Courts have considered a criminal conviction as <u>one factor</u> in making a custody determination, but Defendants, in their survey across 300 years and apparently every relevant jurisdiction, .have found no case where a court abrogated a parent's custody rights based solely on the fact of a conviction.[14] In fact, as noted above, courts have universally rejected the proposition that the mere fact of a conviction, sex offense or otherwise, is sufficient to justify an abrogation of custodial rights absent individualized "compelling circumstances." <u>See, e.g</u>, <u>Bear</u>, 769 F.3d at 1229; <u>Quinn</u>, 698 F.3d at 652; <u>Davis</u>, 452 F.3d at 995; <u>Dell Valle-Cruz</u>, 785 F.3d at 51-52, 62-63; <u>Worley</u>, 685 F.3d at 408; <u>Voelker</u>, 489 F.3d at 154-55; <u>Widmer</u>, 785 F.3d at 208. The "tradition" identified by Defendants, is simply that a criminal conviction is a factor that can be considered in an overall assessment of whether a parent is so unfit that denial of custody is in the best interests of the child.[15]

---

[14] Neither <u>Dumain v. Gwynne</u>, 92 Mass. 270, 272-73 (10 Allen) (1865) nor <u>Trawick v. Trawick</u>, 173 So. 2d 341, 343 (La. Ct. App. 1965) supports Defendants' contention that "[t]he American tradition shows that serious felonies justify State intervention into a parent's physical custody of his or her child." Aplt. Br. at 32. In <u>Dumain</u>, the court merely considered that the father had failed to take care of his children while in prison for burglary. 92 Mass. at 273-73. In <u>Trawick</u>, the Court merely mused that there might be felony convictions that would justify abrogation of custodial rights. 173 So. 2d at 343. In any event, two cases, over 300 years, do not a tradition make.

[15] Defendants cite <u>United States v. Loy</u>, 237 F.3d 251, 269 (3d Cir. 2001) for the proposition that "convicted pedophiles may . . . lose custody of their children or have restrictions placed on their parental rights." Aplt. Br. at 36. But in <u>Loy</u> itself, the district court declined to construe a term of supervised release limiting a child

23

Defendants are correct that several states have decided that a conviction for certain felonies <u>can be</u> the basis for abrogation of parental rights. But in no case does a state use the mere fact of any conviction as conclusive proof of unfitness or as the sole determinant for a decision to permanently remove a parent from the home. Under such statutes, the criminal conviction may only serve to abrogate parental rights only upon hearing at which all the attendant facts and circumstances are considered and only upon finding that such abrogation is in the best interests of the child.

The specific examples highlighted by Defendants demonstrate the point. In Mississippi, a felony offense against a child is only potential grounds for termination "if reunification between a parent and child is not desirable toward obtaining a satisfactory permanency outcome." MISS. CODE ANN. § 93-15-121. Wisconsin law dictates that a hearing must be held on a petition to terminate parental rights and that, at such hearing, the court will consider all attendant facts and circumstances. WIS. STAT. § 48.254. Minnesota does the same. MINN. STAT. §§

---

pornography offender's contact with minors as applying to his own children. 237 F.3d at 270. In doing so, the Court noted Mr. Loy's "fundamental right to raise his children" and the constitutional concerns if the condition were construed otherwise. <u>See</u> <u>id.</u> Similarly, Defendants cite <u>Cocke v. Hannum</u>, 39 Miss. 423 (1860) to suggest that conviction for a sex offense establishes unfitness. Aplt. Br. at 36. <u>Cocke</u>, however, says nothing about criminal convictions establishing unfitness and, in fact, affirms that the father's right to custody is supreme unless he is found to be unfit "by reason of insanity, inability to maintain [the child], or his habits are such as to certainly endanger the morals or safety of the child." 39 Miss. at 425.

260C.509, 260C.511. Even if the Minnesota court does deny parental rights, this determination must be reviewed annually – during which review the court considers whether the child may return home. Id. § 260C.521.[16] Likewise, in Missouri, parental rights may not be terminated unless such termination is found to be "in the best interests of the child." MO. REV. STAT. § 211.444.[17]

These statutes do not, as Defendants would have it, show a general recognition that "commission of cruel felonies targeting children demonstrate [sic] unfitness to have any parental rights." App. Br. at 35 (emphasis in original). At most, they show that under current American law, in some jurisdictions, conviction of some crimes is grounds for a hearing to determine if the facts and circumstances

---

[16] The same is true for "Illinois, Indiana, Iowa, Louisiana, Maine, New York, Oklahoma, and Tennessee." Aplt. Br. at 35 (citing Philip M. Genty, Procedural Due Process Rights of Incarcerated Persons in Termination of Parental Rights Proceedings: A Fifty State Analysis, 30 J. FAM. L. 757, 782-86 (1991)). The "footnotes omitted" by Defendants show that, in each case, termination can proceed only after a hearing to determine the best interests of the child. Id. at nn. 86-93.

[17] Defendants cite Matter of Pima County., Juvenile Action Nos. S-826 and J59015, 643 P.2d 736, 738 (Ariz. Ct. App. 1982), for the proposition that "crimes such as child molestation, rape and armed robbery, . . . and the murder of one's own child demonstrate parental unfitness." Aplt. Br. at 33. But this case was merely commenting on an Arizona statute which, like the others cited here, requires an individualized hearing and consideration of the best interests of the child. See id.; see also ARIZ. REV. STAT. § 8-533(B)(4). It also only applies to individuals who are incarcerated at the time the petition is brough. See id.

of such conviction warrant an abrogation of parental rights.[18] Nor are these statutes "historical" from a constitutional perspective. The statutes highlighted by Defendants were passed in the twenty-first century. Aplt. Br. at 34; see, e.g., MINN. STAT. § 260C.503 (enacted 2012); MISS. CODE ANN. § 93-15-121 (enacted 2016); MO. REV. STAT. § 210.117 (enacted 2004).

## B. Alabama Code § 15-20A-11(d)(4) Does Not Pass Constitutional Review

It is highly questionable whether § 15-20A-11(d)(4) passes even rational basis review. The statute is egregiously both over- and underinclusive.

Absence of a biological parent from the home is both a significant risk factor for child abuse (sexual or otherwise) and "causes negative developmental consequences . . . in interpersonal relationships, academic performance, psychiatric status, delinquency and social status, health status, economic outcomes, and in practically every social and psychological metric used to qualify as functioning human beings." Doc. 57 (Burkhart Test.) at 176:15-25; Doc. 101-8 (Burkhart Rep.) at 11. In light of these effects, "[t]here is solid consensus in the field of developmental psychology that legally imposed separation of a child from a parent must not be done unless there is a high probability that the child is in imminent peril." Id. at 10. Accordingly, "the mandate to separate the parent from the child as

---

[18] As the article cited by Defendants notes, most states do not allow a petition for termination of parental rights based on a criminal conviction. Genty, Procedural Due Process Rights, at 782.

a matter of course, and not fashioned by a cautious and critical judgment, is ill-advised and simply meritless." Id. at 12-13. Yet this is precisely what § 15-20A-11(d)(4) does.

At the same time, the statute allows "every qualifying adult sex offender access to minors for four hours at a time in any one place on two consecutive days and nine aggregate days per month, so long as such access occurs between the hours of 6:00 a.m. and 10:30 p.m." Doc. 150 (Op. and Ord.) at 6 (citing ALA. CODE §§ 15-20A-11(d)(4), 15-20A-4(14), 15-20A-4(20)). Under the statute, such access is allowed regardless of whether the individual had previously committed multiple offenses against their own child. Thus, by failing to take individual circumstances into account, § 15-20-11(d)(4) manages to have the worst of both worlds – harming the child and denying the constitutional rights of parents who are not an imminent peril to their children while at the same time allowing substantial, unsupervised access to parents who are. This is not "rational."

Even if the statute could survive rational basis review, it certainly does not pass strict scrutiny. Under strict scrutiny, it is the State's burden to prove two things: "that the restriction furthers a compelling state interest and [that it] is narrowly tailored to achieve that end." Reed v. Town of Gilbert, 576 U.S. 155, 171 (2015) (quoting Ariz. Free Enterprise Club's Freedom Club PAC v Bennet, 564 U.S. 721, 734 (2011)). To show that the restriction furthers a compelling state

interest, the government must demonstrate that the "recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 641 (1994). The State "must be able to adduce empirical support or at least sound reasoning on behalf of its measures." Id. at 666. To show "narrow tailoring," the State must show that it has adopted the "least restrictive means" of achieving its stated interest. Ams. For Prosperity Found. v. Bonta, 141 S. Ct. 2372, 2383 (2021) (quoting McCullen v. Coakley, 573 U.S. 464, 478 (2014)).

Alabama Code § 15-20A-11(d)(4) fails on both prongs. The State has produced no evidence that the statute actually protects children. There is no evidence that the incidence of child sexual abuse or of sexual recidivism in general has gone down since enactment of the statute. Nor, in light of the statute's over- and underinclusiveness, can it be said that "sound reasoning" supports the restrictions imposed. As to narrow tailoring, Alabama Code § 15-20A-11(d)(4) is not the "least restrictive means" because the state could hold a hearing prior to taking away parental rights.[19]

---

[19] The statute could also, of course, be more narrowly tailored by including fewer qualifying offenses, being time-limited, providing rights of judicial review, providing criteria for reinstatement into the home (such as completion of a treatment program and successful evaluation), allowing residence under certain conditions (such as the presence of a separate, qualified caregiver or ongoing supervision by the Alabama Department of Human Resources), etc., etc.

Defendants' argument to the contrary fails to meaningfully address this simple fact, and rests on unsupported factual assertions. Aplt. Br. at 40-43. The study cited by Defendants' expert in support of his claim that "possession of child pornography is indicative of pedophilia" actually found that it is <u>more</u> indicative of pornography addiction. <u>See</u> Doc. 86-13 (DeLisi Dep.) at 63:11-66:11; <u>see also</u> Doc. 101-9 (Helmus Rep.) at 7-11.[20] Defendants ignore the fact that the risk associated with "cp-only" offenders such as Mr. Henry is remarkably low. <u>See</u> Doc. 101-9 at (Helmus Rep.) at 6-7, 32. Only about 1.4% of those individuals will go on to commit any contact sexual offense. <u>Id.</u>

Defendants' contention that "an estimated 9.2% to 46% of child pornography offenders will commit another sex crime" is simply not grounded in fact. <u>See</u> <u>id.</u> at 22-23. Even according to Defendants' own expert, these estimates depend on "inputs that match the heterogeneity of the sex offender population." Doc. 86-11 at 19. That is, the estimate for undetected recidivism depends on the <u>type</u> of sexual offense and the history of the <u>individual</u> offender. For "cp-only"

---

[20] Defendants assert in their Brief that ".6% of the general population indicate a sexual interest in children." Aplt. Br. at 40-41. While the relevance of this claim is unclear, Defendant's expert acknowledged at deposition that this figure is actually the percentage of respondents to an anonymous telephone survey conducted in Canada who claimed to have had sex with a child under the age of 13. Doc. 86-13 (DeLisi Depo.) at 125:18-128:21; <u>see</u> <u>also</u> Joyal, C.C. & Carpenter, J., <u>The Prevalence of Paraphilic Interests and Behaviors in the General Population: A Provincial Survey</u>, THE JOURNAL OF SEX RESEARCH 54(2), 161-171 (2017) (the sole citation supporting the statement).

offenders, Defendants' expert makes no claim regarding undetected recidivism rates. See id.; see also Doc. 101-9 (Helmus Rep.) at 22-23.

Finally, Defendants make much of the contention that half the people convicted of a child pornography offense have previously committed a contact offense (either detected or undetected). App. Br. at 41. But that means, tautologically, that half (including Mr. Henry) have not. And, to the extent a previous contact offense is relevant to whether or not the individual can live with their own children, that fact can be accounted for at a hearing to determine the issue. [21] Indeed, Defendants' own expert, Dr. DeLisi, notes that the importance of undetected offenses is not to argue that every sex offender is dangerous, but that individualized information is needed for "the most accurate risk assessment." See Doc. 86-11 (DeLisi Rep.) at 22. Thus, Defendants' own evidence demonstrates that even if Defendants' factual assertions were correct, wholesale enforcement of a complete, lifetime, non-appealable ban on living with one's own children would still not be the least restrictive means of achieving the State's interest. United States v. Widmer, 785 F.3d 200, 208 (6th Cir. 2015), cited by Defendants, says nothing different. In that case, the court upheld a condition of supervised release limiting a child pornography offender's contact with own children only after

---

[21] While the argument that a prior contact offense indicates future dangerousness among persons convicted of child pornography possession is intuitively appealing, it is not borne out by research in the field. Doc. 101-9 (Helmus Rep.) at 19-20.

conducting an inquiry into the specific facts and circumstances of the offense. <u>See</u> <u>id.</u> In doing so, the Court specifically noted that this restriction was for a limited time and that the individual could petition the court to reduce or remove the condition. <u>Id.</u>

Though this Court need not decide the issue, Supreme Court precedent strongly suggests that the State must provide an individualized hearing prior to imposing such a substantial burden on parental rights. <u>See</u> <u>Stanley v. Illinois</u>, 405 U.S. 645, 649 (1972) (father entitled to a hearing on his fitness as a parent before his children were taken from him); <u>see also</u> <u>Santosky v. Kramer</u>, 455 U.S. 745, 747-48 (1982) ("due process requires that [in order to terminate parental rights] the State must support its allegations [of unfitness] by clear and convincing evidence").[22] Anything less would violate the constitutional rights of the parent. As noted above, Defendants' Brief lists several states in which the commission of certain felonies <u>can be</u> the basis for abrogating parental rights. But in each of these states, recognizing the principle that an individualized assessment is constitutionally required, the state must afford a hearing to the parent <u>before</u> it may take away parental rights for any meaningful length of time. <u>See, e.g.</u>, Miss. Code Ann. § 93-15-121; Wis. Stat. § 48.254; Minn. Stat. § 260C.509.

---

[22] Case law is sparse on this issue for the simple reason that no State has ever attempted to enact such a sweeping abrogation of parental rights absent such a hearing.

*C. The Existence of a Hypothetically Constitutional Application of a Statute Does Not Save It Under Strict Scrutiny Review.*

In contravention of well-established principles of law regarding parental rights and strict scrutiny review, Defendants rely on United States v. Salerno, 481 U.S. 739, 745 (1987), to argue that § 15-20A-11(d)(4) is constitutional so long as there is, even hypothetically, a constitutional application of the statute. See Aplt. Br. at 43. That argument, properly rejected below (Doc. 61 (Mem. Op. and Order) at 11-19), has also been rejected by this Court. Club Madonna, 42 F.4th at 1256.

"Salerno is correctly understood not as a separate test applicable to facial challenges, but [as] a description of the outcome of a facial challenge in which a statute fails to satisfy the appropriate constitutional framework." Id. (quoting Doe v. City of Albuquerque, 667 F.3d 1111, 1217 (10th Cir. 2012)); see also Marc E. Isserles, Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement, 48 Am. U. L. Rev. 359, 387 (1998) ("Salerno's 'no set of circumstances' is not a 'test' that prescribes the application-specific method of determining constitutional invalidity, but rather a descriptive claim about statutes whose terms state an invalid rule of law."); cf. Johnson v. United States, 576 U.S. 591, 603 (2015) (the existence of some "clearly risky crimes" does not save a statute from being void for vagueness). Defendants' brief fails to acknowledge Club Madonna, much less present a reasoned argument why the district court's carefully reasoned analysis was incorrect. Nor do Defendants address the

numerous examples cited by the district court, including <u>Salerno</u> itself, in which both the Supreme Court and Eleventh Circuit have applied the "relevant constitutional test" to determine the facial validity of a challenged statute.[23] <u>See</u> Doc. 61 (Mem. Op. and Order).

In this case, however, the Court need not belabor this point. Alabama Code § 15-20A-11(d)(4) is unconstitutional as applied <u>in every case</u>, because in every case the law could be more narrowly tailored by requiring a hearing prior to the abrogation of custodial rights. <u>See</u> <u>Doe v. Reed</u>, 561 U.S. 186, 231-39 (2010) (Thomas, J., dissenting) (noting that even assuming petitioners must show that "no set of circumstances exist in which the statute could be applied constitutionally," the statute at issue did not survive strict scrutiny because it was <u>always</u> overbroad).

Nor is it clear that there is even a hypothetical situation in which the State would be justified in so thoroughly abrogating a parent's custodial rights based <u>solely</u> on the fact of conviction. For instance, Defendants argue that the statute could be constitutionally applied to "any biological parents who failed to take steps to develop a relationship with their child." Aplt. Br. at 46. But even if this were a correct statement of law (it is not), a hearing would be needed to determine

---

[23] Defendants note that the Supreme Court cited <u>Salerno</u> in the 2023 case <u>United States v. Hansen</u>, 143 S. Ct. 1932, 1939 (2023). <u>Hansen</u> though casts no doubt on the district court's analysis or this Court's holding in <u>Club Madonna</u>. There, as it has before, the Court recites "the <u>Salerno</u> rule" before proceeding to evaluate the statute at issue under the relevant constitutional test.

whether the affected parent fell into this category. Similarly, Defendants argue that there are <u>some</u> crimes, the unadorned elements of which are so heinous and so indicative of irredeemable criminality towards one's own children that a single offense, regardless of any other fact or circumstance, justifies the imposition of § 15-20A-11(d)(4)'s lifetime, non-appealable ban.

Defendants offer two examples: "first degree rape" and "child sex trafficking." Aplt. Br. at 38. As Defendants acknowledge, first degree rape can be committed by one child against a younger child and does not require any element of forcible compulsion. Aplt. Br. at 38 (citing ALA. CODE § 13A-6-61(a)(3) as interpreted by <u>L.M.L. v. Alabama</u>, 2022 WL 1721575 at *6 (Ala. Crim. App. 2022)). Relatedly, "child sex trafficking" occurs whenever an individual "provides . . . for the transport of a child for the purposes of engaging in a sex act with a child . . . for his benefit." ALA. CODE § 13A-6-125. Thus, the same 16 year old that commits first degree rape also commits child sex trafficking if he drove the victim to the site of the offense.

As the Supreme Court has repeatedly recognized, the adolescent brain is not fully developed. <u>See, e.g.</u>, <u>Miller v. Alabama</u>, 567 U.S. 460, 471 (2012) (finding that children cannot be sentenced to incarceration for life without possibility of parole). Children "have a lack of maturity and an underdeveloped sense of responsibility" but also an "enhanced prospect that, as the years go by and

neurological development occurs, [these] deficiencies will be reformed." Id. Yet, § 15-20A-11(d)(4) precludes a court from determining that the 16 year old convicted of first degree rape or child trafficking can live with his own minor children thirty (30) years later – regardless of the specific circumstances of the conviction or anything that has happened in the ensuing decades. Alabama Code § 15-20A-11(d)(4) cannot be constitutionally applied to "the worst of the worst," at least in part, because we do not know who the "worst of the worst" are without looking beyond the unadorned fact of a single conviction. Facts matter – and must be taken into account before imposing a lifetime, non-appealable ban on living with one's own minor children. A statute that not just ignores those facts but actually precludes any consideration of them is not "narrowly tailored."

Trying a different tack, Defendants argue that § 15-20A-11(d)(4) is constitutional as applied to "grandparents, stepparents, siblings, or stepsiblings" because these persons do not have parental rights. Aplt. Br. at 45. But as the district court notes, the rights of association protected by the First Amendment include the right to cohabitate with one's relatives. Doc. 150 at 9 (citing Roberts v. United States Jaycees, 468 U.S. 609, 619 (1984)). "Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not on a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life." Roberts,

468 U.S. at 619; see also Moore v. City of E. Cleveland, 431 U.S. 494, 504 (1997) ("Ours is by no means a tradition limited to respect for bonds uniting members of the nuclear family.").

The analysis of § 15-20A-11(d)(4) under the First Amendment is the same as under the Fourteenth. Two stepsiblings may be no more than passing acquaintances, but they may also be an integral part of the "marital family" at the heart of the Supreme Court's jurisprudence recognizing the limits on a State's ability to intrude upon decisions regarding family life. See Michael H., 491 U.S. at 123-24 (recognizing the "sanctity" of the "unitary family"). Under the very cases relied upon by Defendants, the relationships formed by close familial relationships are entitled to constitutional protection. Id.; see also Lehr, 463 U.S. at 261 ("The importance of the familial relationship, to the individuals involved and to society, stems from the emotional attachments that derive from the intimacy of daily association . . . as well as from the fact of blood relationship.").

### D. The District Court Properly Enjoined Enforcement of § 15-20A-11(d)(4)

As the district court correctly found, because § 15-20A-11(d)(4) fails strict scrutiny, it is facially invalid. Doc. 150 (Op. and Order) at 15. Facial invalidation is simply the result of failing to meet constitutional standards. Club Madonna, 42 F.4th at 1256 (a statute that fails to meet the relevant constitutional test is "invalid in all its applications"). A different rule, that a law is valid so long as there was at

least one hypothetical situation in which it could be constitutionally applied, would allow "[s]tates and municipalities [to] consistently sidestep facial challenges and the unambiguous commands of federal law." Id. "That can't be right." Id.

Defendants argue that the district court erred by issuing a "universal" injunction, but the cases they cite in support are simply inapposite. See Aplt. Br. at 50-51. Alley v. U.S. Dep't of Health & Hum. Servs., 590 F.3d 1195, 1205 (11th Cir. 2009), is a FOIA case concerned with proper interpretation of injunctions against releasing and withholding information. In that case, the court specifically declined to review the scope of the injunction at issue. Id. at 1205 ("This is not the time or place to review the wisdom of the [] injunction."). Gill v. Whitford, 548 U.S. 48, 68 (2018) is a gerrymandering case focused on standing. It says nothing about statutes found to be facially invalid because they fail strict scrutiny. See generally, id. California v. Texas, 141 S. Ct. 2104, 2116 (2021) is also a standing case, and also says nothing about facially invalid statutes. Finally, Georgia v. President of the United States, 46 F.4th 1283, 1303 (11th Cir. 2022) specifically affirms that the "nature of the remedy is dependent on the nature of the defendant's action." In this case, the defendant's action is a facial challenge to Alabama Code § 15-20A-11(d)(4) on the grounds that it fails strict scrutiny. The remedy, as this Court's precedent confirms, is facial invalidation of the statute.

As Judge Huffaker noted, it is not for the court to rewrite the statute to conform it to constitutional standards. Doc. 150 (Op. and Order) at 14; see also, e.g., Iancu v. Brunetti, 139 S. Ct. 2294, 2296 (2019). That task is for the Alabama legislature. See id. The statute, as written, applies to all parents (and grandparents, stepparents, siblings, and stepsiblings) – regardless of their individual history or nature of their relationship with the minor child; it applies to all sexual crimes involving a child under age 12 or a child pornography offenses involving a victim under age 17 – regardless of the facts and circumstances of the crime, how long ago it was committed, or any other consideration; and it applies forever and without appeal regardless of anything the individual might do. ALA. CODE § 15-20A-11(d). Having now been apprised of the constitutional infirmities of the statute, it is for the legislature to decide how to proceed.

## CONCLUSION

Throughout the proceedings below, the district court carefully considered the arguments and evidence presented by the Parties – correctly concluding that the statute is facially invalid because it fails strict scrutiny. In doing so, the court noted the vital importance of recognizing and protecting the constitutional rights of even the most despised in society. Doc. 150 (Mem. Op. and Ord.) at 17. "Sex offenders are not second-class citizens, and anyone who thinks otherwise would do well to remember Thomas Paine's wisdom: 'He that would make his own liberty secure,

must guard even his enemy from oppression; for if he violates this duty, he establishes a precedent that will reach to himself.'" Id. (internal quotation and citation omitted).

For the foregoing reasons the judgment of the district court should be AFFIRMED.

Respectfully submitted this 5th day of April, 2024.

P.M. DUBBELING, PLLC

/s/ *Paul M. Dubbeling*
Paul M. Dubbeling
N.C. State Bar No. 47014
210 North Columbia Street
Chapel Hill, NC 27514
919-635-6005
Attorney for Plaintiff-Appellee

AGRICOLA LAW, LLC

/s/ *Algert S. Agricola, Jr.*
Algert S. Agricola, Jr.
Alabama State Bar No. 0364-R79A

/s/ *Barbara H. Agricola*
Barbara H. Agricola
Alabama State Bar No. 6338-R77A

127 South 8th Street
Opelika, AL 36801
334-759-7557
Attorneys for Plaintiff-Appellee

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains less than 13,000 words.

This document complies with the typeface requirements Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word in 14-point Times New Roman font.

This 5th day of April, 2024.

P.M. DUBBELING, PLLC


/s/ *Paul M. Dubbeling*
Paul M. Dubbeling
N.C. State Bar No. 47014
210 North Columbia Street
Chapel Hill, NC 27514
919-635-6005
Attorney for Plaintiff-Appellee

**CERTIFICATE OF SERVICE**

I hereby certify that I have filed the foregoing utilizing the Court's CM/ECF

system, which will send notice of such filing to all parties of record.

This 5th day of April, 2024.

P.M. DUBBELING, PLLC


/s/ *Paul M. Dubbeling*
Paul M. Dubbeling
N.C. State Bar No. 47014
210 North Columbia Street
Chapel Hill, NC 27514
919-635-6005
Attorney for Plaintiff-Appellee